UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE BLACK & DECKER CORPORATION,<br>BLACK & DECKER, INC., BLACK & DECKER<br>(U.S.) INC., EMHART CORPORATION, and<br>EMHART, INC.,<br><br>Defendants. | CIVIL ACTION<br>No. 1:04-CV-10659-DPW |

**RENEWED SUMMARY JUDGMENT SUBMISSION
PURSUANT TO COURT'S MARCH 19, 2004 ORDER, APRIL 5, 2004
STATUS REPORT AND APRIL 8, 2004 STATUS CONFERENCE
<u>REGARDING BROS, NEW JERSEY SITE</u>**

# 1938280_v1

Table of Contents for BROS

TAB

1. Introduction;

2. Summary Of BROS Site Argument;

3. Motion And Supporting Memorandum Of Liberty Mutual Insurance Company For Summary Judgment, dated February 9, 1998, pages 150-157;

4. Memorandum Of Black & Decker In Support Of Motion For Partial Summary Judgment, dated February 9, 1998, pages 134-158;

5. Opposition Of Liberty Mutual Insurance Company To Defendants' Motion For Partial Summary Judgment, dated March 2, 1998, pages 60-63;

6. Further Memorandum In Support Of Black & Decker Motion For Summary Judgment With Respect To Black & Decker Sites (Bros, Douglassville and Huth), dated November 13, 1998, pages 3-11;

7. Supplemental Memorandum Supporting Liberty Mutual Insurance Company's Motion For Summary Judgment With Respect To The Bros, Berks Landfill, Huth Oil, Ansonia And Derby Sites, dated December 1, 1998, pages 42-62;

8. Reply Memorandum Regarding Maryland And Connecticut Sites (submitted by Black & Decker), dated December 4, 1998; pages 1-4;

9. Black & Decker's Supplemental Submission Regarding December 8, 1998 Hearing;

10. Liberty Mutual Insurance Company's Response To The Defendants' Supplemental Submission Regarding December 8, 1998 Hearing

11. Draft Procedural Order, dated May 17, 2002, pages 34-35

12. Joint Supplemental Submission, dated July 24, 2002; pages 27-28;

13. Revised Joint Supplemental Submission, dated August 15, 2002, pages 37-38;

14. Hearing Transcript – August 27, 2003;

15. Exhibits:

    a.   March 20, 1992 Complaint;

    b.   November 30, 1992 Amended Complaint;

    c.   December 17, 1992 correspondence to Black & Decker;

    d.   March 11, 1993 Black & Decker counsel correspondence;

    e.   September 10, 1993 BROS settlement correspondence;

    f.   March 3, 1994 correspondence to Liberty Mutual;

    g.   August 19, 1994 correspondence to Black & Decker's counsel;

    h.   October 7, 1994 correspondence to Liberty Mutual;

    i.   December 8, 1994 Liberty Mutual memorandum;

    j.   August 15, 1995 Liberty Mutual correspondence;

    k.   December 18, 1995 correspondence to Liberty Mutual;

    l.   Harold Hartung deposition transcript – November 17, 1997;

    m.   Robert Gregory deposition transcript – January 23, 1998;

    n.   Expert reports of April 30, 1998; February 11, 2003.

# 566812_v1

# Tab 1.

Introduction:

Pursuant to the Court's Order of March 19, 2004, the April 5, 2004 Status Report, the April 8, 2004 Status Conference, and Rule 56 of the Federal Rules of Civil Procedure, Liberty Mutual moves for entry of Summary Judgment in its favor with respect to the BROS, New Jersey site.

As reasons, therefore, all of which are more fully set forth below and in the memoranda and exhibits attached hereto, Liberty Mutual states:

1.   The pollution exclusion in the applicable Black & Decker policies bar coverage for Black & Decker as it relates to any claim arising out of the BROS site; and

2.   Since Black & Decker has never been named as a defendant in any lawsuit relating to the BROS site, there is no duty to defend.

In support of these arguments, Liberty Mutual, herewith resubmits the motion, memoranda and exhibits previously submitted to the Court with respect to the entry of summary judgment in favor of Liberty Mutual, and in opposition to the summary judgment motion of Black & Decker. Further, these materials are supplemented by discovery, both factual and expert, that has occurred since the original submission of the summary judgment motions.

Argument:

The BROS Site was a waste oil storage, recovery and refining facility in operation from at least the 1950's. The central feature of the BROS Site was a lagoon approximately 12.7 acres in size and held approximately 70 million gallons

of contaminated wastewater and another 2 1/2 million gallons of oil which was used to accumulate waste oil as it was delivered to the facility.

Black & Decker's alleged connection to the BROS Site is that A&A Waste Oil, Inc. ("A&A") removed a waste oil and water mixture from Black & Decker's facility in Hampstead, Maryland and that some of the oil allegedly was transported to the BROS Site for disposal. Black & Decker has conceded that A&A picked up waste oil/water from the Hampstead plant between approximately 1973 and 1982.

On or about December 17, 1992, Black & Decker received an "invitation" to participate in a settlement/mediation procedure in two civil actions pending in the United Stated District Court for the District of New Jersey. Liberty Mutual was first notified of Black & Decker's invitation to participate in the BROS settlement/mediation procedure some 14 months after the invitation was made by way of a March 3, 1994 letter from Black & Decker's insurance broker, Alexander & Alexander.

There are no policies implicated prior to March, 1973 because the BROS Settlement Process Committee, which invited Black & Decker to join the BROS settlement/mediation process, has only "alleged or 'determined' that Black & Decker's waste oil was transported to the BROS Site during the following time periods: 3/73 – 3/74; 6/74 – 11/74; 1/75 – 1/78; 2/78 – 1/79; and 7/79." Because the BROS Settlement Process Committee has limited its allegations to alleged shipments during the period between March, 1973 and July, 1979, Black & Decker

2

cannot possibly recover for claims pertaining to the BROS Site under policies, if any, applicable prior to March, 1973.

This Court has ruled that Maryland law governs all claims for insurance coverage under the Black & Decker line of insurance policies at issue. Accordingly, pursuant to Maryland law, Black & Decker cannot succeed in their claims for coverage at the BROS Site for the Black & Decker policies covering the period July 1, 1971 through July 1, 1979, which all contain the pollution exclusion, because the Defendants cannot show that the pollution at the BROS Site was both "sudden" and "accidental."

Waste liquids were discharged into the lagoon at the BROS Site as a part of the BROS Site's routine and deliberate business activities and, accordingly, the discharges to the lagoon were not "accidental" within the meaning of the "sudden and accidental" exception to the pollution exclusion. Moreover, The BROS Site used equipment that was "not really very good" and known to be leaking and weeping as part of its on-going operations. The operators of the BROS Site thus knowingly and deliberately engaged in activities causing the pollution at the BROS Site – there quite simply has been no accident. Moreover, the undisputed factual record establishes that the pollution at issues at the BROS Site occurred continually over many years, and thus cannot possibly be construed as being "sudden" within the meaning of the exception to the pollution exclusion.

Defendants have attempted to elicit testimony concerning a discrete incident where a tank at the BROS facility is alleged to have sprung a leak in June of 1971

with its contents escaping across the BROS Site into the lagoon. Even assuming that the alleged release was both sudden and accidental, such a discrete instance of leakage cannot give rise to coverage because the Defendants cannot show that the instance of leakage was out of the ordinary or more than a de minimis source of the pollution at the Site. Moreover, Mr. Gregory, a witness testified that the amount of was fluid that flowed into the waste oil lagoon as a result of the alleged tank leak in 1973 was a "small amount" relative to the size of the lagoon. It also cannot be disputed that the very purpose of the lagoon was to receive waste liquids and that a leak contributed to a small additional amount to the lagoon is of no import. As a waste oil storage and recycling facility, the BROS Site was unquestionably pollution prone. There, quite simply, has been no sudden and accidental event at the BROS Site warranting coverage under the exception to the pollution exclusion. Furthermore, Black & Decker policies at issue with respect to the BROS Site, each provide that Liberty Mutual shall "defend any suit against the insured alleging such injury, sickness, disease, or destruction and seeking damages on account thereof..." Liberty Mutual, however, is entitled to a judgment in its favor as a matter of law at the BROS Site because no "suit" or its equivalent was ever commenced against Black & Decker that relates to the Site.

    Black & Decker has not been named as a defendant in any formal lawsuit pertaining to the BROS Site. Accordingly, this Court should find that coverage is precluded bases on that fact alone. Moreover, even if this Court were to extend the definition of the term "suit" beyond its customary meaning of formal lawsuit to also

encompass functional equivalents to a suit, this Court should nonetheless find that the Defendants cannot succeed in their claim for coverage.

With respect to the BROS Site, "Black & Decker" had received a letter indicating that it was "to <u>invite</u> you to participate in a <u>voluntary</u>, <u>informal</u>, <u>non-litigated</u> settlement/mediation process relating to the BROS Site." The letter was sent from private parties, not a government agency. Under the criteria set forth in the <u>Zecco</u> case, the invitation to participate in the settlement/mediation process for the BROS Site does not constitute a "suit" within the meaning of the Black & Decker policies.

The Defendants, who categorically deny any involvement at the Site, cannot show that a failure to comply with the BROS settlement/mediation letter would "itself somehow alter the substantiality of the insured's liability, by making liability more likely or more devastating or by giving rise to some particular penalty." <u>Zecco,</u> 938 F.Supp. 65, 68 (D.Mass. 1996). While the letter did indicate that the settlement process was "in lieu of joinder as a defendant," the letter did not attach any penalty or indication that failure to participate would make "liability more likely or more devastating." <u>Id.</u> Additionally, the letter was from private parties and not from a governmental agency whose letters would "tend to have more severe consequences than those from private parties." <u>Id.</u> Finally, the letter was a "polite invitation" rather than a letter indicating that "the recipient cannot refuse." <u>Id.</u> Indeed, the letter stated that participation in the settlement process was "voluntary."

5

As a substitute for any real analysis of the relevant factors, Black & Decker inappropriately and in a misleading manner attempts to suggest that they were responding to a court order.  The thrust of Defendants' argument with respect to the "no suit" issue appears to be that "it would have been 'dangerous to ignore' the PRP proceedings" and that "[e]arly involvement in the settlement discussions" was necessary.  Defendants' suggestion that there would have been dire consequences if they did not participate in the BROS settlement/mediation process, however, is belied by the undisputed facts regarding the settlement/mediation and what, in fact, occurred.

Indeed, Defendants concede that "[w]hen the PRP Group demanded that Black & Decker pay $895,000 as its share of remediation costs, Black & Decker refused to accede to the demand and withdrew from the proceedings."  Thereafter, without Defendants' participation, the BROS claims settled.  Defendants have not and cannot point to any adverse consequences that have resulted from their withdrawal from the BROS settlement/mediation process.  In fact, the Defendants were never sued, or joined as a "party" to the then pending actions.  In its demand for coverage from Liberty Mutual, the Defendants have identified <u>only</u> $5,686.00 as allegedly paid "remediation" costs.  As to defense costs, the Defendants allege that they expended $383,134.00.  Therefore, Defendants should not be heard now to complain that "it would have been dangerous to ignore PRP proceedings" because that is ultimately what Defendants did in fact do, with no adverse consequences.

Accordingly, notwithstanding Defendants' erroneous assertions to the contrary, the application of the factors set forth in the <u>Hazen</u> and <u>Zecco</u> cases to the BROS settlement/mediation letter clearly negates the Defendants' claims that Liberty Mutual has a duty to defend at the BROS Site because there was no "suit" or any "suit" equivalent ever asserted against the Defendants concerning the Site.

# 1941951_v1

**CERTIFICATE OF SERVICE**
I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.
Dated: 5/17/04