# Exhibit B.

FILED

NOV 3 0 1992

AT 8:30_____ M
WILLIAM T. WALSH
CLERK

# 46

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CAMDEN VICINAGE

VICKI A. O'MEARA
Acting Assistant Attorney General
Environment and Natural Resources
  Division
U.S. Department of Justice
By: David E. Street (DS 0802)
Senior Attorney
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, D.C.  20044
(202) 514-5471

MICHAEL CHERTOFF
United States Attorney
By: Paul Blaine (PB 5422)
Assistant U.S. Attorney
401 Market Street, Fifth Floor
Camden, New Jersey  08101
(609) 757-5412

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ALLIED-SIGNAL INC.; ATLANTIC CITY ELECTRIC COMPANY;  THE BOEING COMPANY; CROWN CORK & SEAL CO., INC.; DRESSER INDUSTRIES, INC.; E.I. DUPONT DE NEMOURS AND COMPANY; INTERNATIONAL FLAVORS AND FRAGRANCES INC.; MONSANTO COMPANY; ROHM AND HAAS COMPANY; ROLLINS ENVIRONMENTAL SERVICES (NJ), INC.; and TEXACO INC.<br><br>　　　　　Defendants. | HON. JOSEPH E. IRENAS<br><br>CIV. NO. 92-1253 (JEI) |

## FIRST AMENDED COMPLAINT

The United States of America, by authority of the Attorney General of the United States and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), alleges as follows:

PRIVILEGED AND CONFIDENTIAL B&D MA LM

- 2 -

## PRELIMINARY STATEMENT

1. This is a civil action brought pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act, as amended ("CERCLA"), 42 U.S.C. § 9607(a). By this action, the United States seeks to recover costs which have been incurred by the United States in response to the release and threatened release of hazardous substances at the Bridgeport Rental and Oil Services Site (hereinafter "the BROS Site" or "Site"), located on Cedar Swamp Road, Township of Logan, Gloucester County, New Jersey. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), the United States also requests a declaratory judgment that the named defendants are liable for all response costs which may be incurred by the United States at the BROS Site in the future.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to Sections 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(b), and 28 U.S.C. §§ 1331, 1345 and 1355.

3. Venue is proper in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. §§ 1391(b) and (c) because the releases or threatened releases of hazardous substances that gave rise to this claim occurred in this district.

- 3 -

<u>DEFENDANTS</u>

4.   Defendant Allied-Signal, Inc. ("Allied") is a corporation organized and existing under the laws of the State of Delaware.  Its principal place of business is located at Columbia Road and Park Avenue, Morristown, New Jersey 07960.

5.   Defendant Atlantic City Electric Company ("Atlantic") is a corporation organized and existing under the laws of the State of New Jersey.  Its principal place of business is located at 6801 Black Horse Pike, Pleasantville, New Jersey 08232.

6.   Defendant The Boeing Company ("Boeing") is a corporation organized and existing under the laws of the State of Delaware. Its principal place of business is located at 7755 East Marginal Way South, Seattle, Washington 98108.

7.   Defendant Crown Cork & Seal Co., Inc. ("Crown") is a corporation organized and existing under the laws of the State of New York.  Its principal place of business is located at 9300 Ashton Road, Philadelphia, Pennsylvania 19114.

8.   Defendant Dresser Industries, Inc. ("Dresser") is a corporation organized and existing under the laws of the State of Delaware.  Its principal place of business is located at 1600 Pacific Avenue, Dallas, Texas 19899.

9.   Defendant E.I. DuPont de Nemours and Company ("DuPont") is a corporation organized and existing under the laws of the State of Delaware.  Its principal place of business is located at 1007 Market Street, Wilmington, Delaware 19807.

PRIVILEGED AND CONFIDENTIAL B&D MA LM          0035538

- 4 -

10. Defendant International Flavors and Fragrances Inc. ("IFF") is a corporation organized and existing under the laws of the State of New York. Its principal place of business is located at 521 West 57th Street, New York, New York 10019.

11. Defendant Monsanto Company ("Monsanto") is a corporation organized and existing under the laws of the State of Delaware. Its principal place of business is located at 800 North Lindbergh Boulevard, Saint Louis, Missouri 63167.

12. Defendant Rohm and Haas Company ("Rohm & Haas") is a corporation organized and existing under the laws of the State of Delaware. Its principal place of business is located at Independence Mall West, Philadelphia, Pennsylvania 19105.

13. Defendant Rollins Environmental Services (NJ), Inc. ("Rollins") is a corporation organized and existing under the laws of the State of Delaware. Its principal place of business is located on Route 322 West and I-295, P.O. Box 337, Bridgeport, New Jersey 08014.

14. Defendant Texaco Inc. is a corporation organized and existing under the laws of the State of Delaware. Its principal place of business is located at 2000 Westchester Avenue, White Plains, NY 10604.

15. Each of the defendants referenced in paragraphs 4 through 14 is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

PRIVILEGED AND CONFIDENTIAL B&D MA LM          0035539

- 5 -

## GENERAL ALLEGATIONS

16. The BROS Site occupies approximately thirty acres of land on Cedar Swamp Road in Logan Township, Gloucester County, New Jersey.  The Site, owned or operated at times by various companies, including Rollins and Allied, accepted CERCLA hazardous substance from numerous sources, including the following named defendants or their predecessors, who generated those substances and/or transported those substances to the Site: Allied, Atlantic, Boeing, Crown, Dresser, DuPont, IFF, Monsanto, Rohm & Haas, Rollins, and Texaco.

17.  The Site was listed on EPA's National Priorities List (NPL) on September 1, 1983, and is ranked thirty-fifth on that list.

18.  The Site is named for its current owner, Bridgeport Rental and Oil Services, Inc. ("BROS"), which operated the Site from April 1969 to October 1981.  Prior to that time it was owned by SCS Corporation (from 1966 to 1969) and by Regal Petroleum Products Company (from 1959 to 1966).  The Site was used at various times as a waste oil reprocessing, waste disposal, and waste storage facility.  The Site is a facility within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

19.  From 1967 to 1981, the Site was periodically inspected by local, state and federal governmental authorities.  These inspections revealed numerous signs of leaks and spills from storage tanks, lagoon overflows, and other instances of poor housekeeping practices, constituting releases or threats of

PRIVILEGED AND CONFIDENTIAL B&D MA LM          0035540

- 6 -

releases of hazardous substances, within the meaning of Sections
101(14) and (22) of CERCLA, 42 U.S.C. §§ 9601(14) and (22).

20.  A series of response actions, including a Remedial
Investigation and Feasibility Study ("RI/FS"), was undertaken at
the Site by EPA beginning in early 1981.  These activities
included several lagoon pumpdowns to relieve the threat of
overflows, the construction of a fence and a mobile carbon
filtration treatment system, and the treatment and disposal of
certain of the lagoon contents.

21.  On December 31, 1984, EPA issued a Record of Decision
("ROD") which selected remedial measures for addressing
contamination at the Site.  The ROD called for remediation in
four phases: (1) installation of a water supply pipeline and
individual residential extensions to replace contaminated private
water supplies near the Site; (2) dismantling of the tank farm at
the Site and disposal of contaminated tank wastes; (3) excavation
and treatment by incineration of lagoon wastes; and (4)
performance of a second-phase RI/FS to address groundwater
contamination migrating off-site.  EPA response actions,
including treatment of lagoon wastes and performance of a second-
phase RI/FS, are currently continuing at the Site.

22.  The United States has incurred "response costs" as
defined in Sections 101(25) and 107(a) of CERCLA, 42 U.S.C. §§
9601(25) and 9607(a), of approximately $29,000,000 for response
actions related to the Site.  The United States will continue to
incur additional response costs in connection with the Site.

PRIVILEGED AND CONFIDENTIAL B&D MA LM             0035541

( )    - 7 -

23. The defendants have not reimbursed EPA for any of the response costs incurred to date by EPA relating to the Site.

FIRST CLAIM FOR RELIEF

24. The statements and allegations set forth in paragraphs 1 through 23 are realleged and incorporated herein.

25. The BROS Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

26. There have been and continue to be "releases" and "threatened releases" of "hazardous substances" within the meaning of Sections 101(14) and (22) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(14) and (22) and 9607(a), into the environment at the Site.

27. As a result of the release or threatened release of hazardous substances from the Site, the United States has incurred "response costs" as defined in Sections 101(25) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(25) and 9607(a), for actions taken in response to the release or threatened release of hazardous substances at and from the Site.

28. The response actions and resulting response costs incurred by the United States in connection with the Site and referenced in paragraph 27 above are not inconsistent with the National Contingency Plan, as set forth in 40 C.F.R. Part 300.

29. Both Rollins and Allied leased and operated certain portions of the Site, or are successors to a company which leased and operated certain portions of the Site, at the time of disposal of hazardous substances at the Site, and are therefore

PRIVILEGED AND CONFIDENTIAL B&D MA LM          0035542

- 8 -

"operators" of the Site within the meaning of Section 107(a)(2)
of CERCLA, 42 U.S.C. § 9607(a)(2).

30. Defendant Rollins accepted hazardous substances for
transport to the Site, which Rollins selected, within the meaning
of Section 107(a)(4) of CERCLA, 42 U.S.C. § 9607(a)(4), and
therefore is liable for response costs incurred by the United
States.

31. Each of the defendants named in paragraphs 4 through 14
of this Complaint arranged for disposal or treatment, or arranged
with a transporter for transport for disposal or treatment, of
hazardous substances within the meaning of Section 107(a)(3) of
CERCLA, 42 U.S.C. § 9607(a)(3), or is a successor to a company
which made such arrangement or arrangements, and therefore is
liable for response costs incurred by the United States.

32. Pursuant to Section 107(a) of CERCLA, 42 U.S.C.
§ 9607(a), defendants Allied, Atlantic, Boeing, Crown, Dresser,
DuPont, IFF, Monsanto, Rohm & Haas, Rollins, and Texaco are
jointly and severally liable to the United States for all
response costs incurred by EPA at the Site and for interest on
the amounts recoverable by the United States in this action.

                    SECOND CLAIM FOR RELIEF

33. The statements and allegations set forth in paragraphs
1 through 32 are realleged and incorporated herein.

34. The United States is entitled to a declaratory judgment
pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2),
because each of the defendants named in this complaint is liable

- 9 -

to the United States under Section 107(a) of CERCLA, 42 U.S.C. §
9607(a), for all response costs incurred by the United States at
the Site in the future.

### PRAYER FOR RELIEF

WHEREFORE, The United States respectfully prays that this
Court:

A.  Enter judgment in favor of the United States against the
defendants, jointly and severally, for all costs incurred by the
United States for response actions related to the Site, totalling
at least $29,000,000, plus interest;

B.  Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C.
§ 9613(g)(2), and 28 U.S.C. § 2201, enter declaratory judgment
for the United States and against the defendants, jointly and
severally, providing that defendants are liable for all response
costs which may be incurred by the United States in the future at
the Site;

C.  Award to the United States its costs and fees in this
action; and

D.  Grant such other and further relief as the Court deems
appropriate.

Respectfully submitted,

By: _____

Roger J. Clegg
Acting Assistant Attorney General
Environment and Natural Resources
Division
United States Department of Justice

PRIVILEGED AND CONFIDENTIAL B&D MA LM        0035544

- 10 -

_David E. Street_

DAVID E. STREET
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources
        Division
United States Department of Justice
(202) 514-5471


MICHAEL CHERTOFF
United States Attorney
District of New Jersey


By:     _Paul A. Bl..._

PAUL BLAINE
Assistant United States Attorney
401 Market Street, Fifth Floor
Camden, New Jersey  08101
(609) 757-5412

Dated:  November 30, 1992


OF COUNSEL:

WILLIAM C. TUCKER
Assistant Regional Counsel
Environmental Protection Agency,
        Region II
26 Federal Plaza, Room 309
New York, New York 10278

PRIVILEGED AND CONFIDENTIAL B&D MA LM        0035545

# Exhibit C.

PITNEY, HARDIN, KIPP & SZUCH

(MAIL TO)
P. O. BOX 1945
MORRISTOWN, NEW JERSEY 07962-1945

(DELIVERY TO)
200 CAMPUS DRIVE
FLORHAM PARK, NEW JERSEY 07932

WILLIAM H. HYATT, JR.

DIRECT DIAL NUMBER
(201) 966-8041

FLORHAM PARK (201) 966-6300
NEW YORK (212) 926-0331

TELEX 64Z014
FACSIMILE (201) 966-1550

NEWARK OFFICE
33 WASHINGTON STREET
NEWARK, NEW JERSEY 07102
(201) 623-1960

DEC 17 1992
C.H. BIACK...



**IMPORTANT!**

**PLEASE READ IMMEDIATELY**

**CONTAINS DEADLINES FOR PARTICIPATING IN PROPOSED SETTLEMENT PROCESS**

Re:  Bridgeport Rental & Oil Services (BROS) Site

Rollins Environmental Services (NJ) Inc.,
et al. v. United States, et al.
Civil Action No. 92-1253 (JEI)

United States v. Allied-signal Inc., et al.
Civil Action No. 92-2726 (JEI)

DEC 1992
RECEIVED

Dear Colleagues:

        The purposes of this letter are (a) to advise you of
recent developments in the litigation relating to the BROS Site;
(b) to invite you to participate in a voluntary, informal, non-
litigated settlement/mediation process relating to the BROS Site;
(c) to transmit to you documents and information required to be
sent to you by a case management order entered in the litigation;
and (d) to notify you that a meeting is expected to be scheduled in
the near future among the litigants and the recipients of this
letter at which information will be provided concerning the status
of the BROS Site, the status of the litigation, and the
settlement/mediation process in which you are invited to
participate.

A.        The Litigation

        Rollins Environmental Services (NJ) Inc. et al. v. United
States, et al., No. 92-1253 ("Rollins") was filed on March 20,
1992. United States v. Allied-Signal, Inc., et al., No. 92-2726

PRIVILEGED AND CONFIDENTIAL B&D MA LM          0035493

Page -2 -
December 15, 1992

("Allied-Signal") was filed on June 30, 1992.  On November 30,
1992, a First Amended Complaint was filed in Allied-Signal.  Copies
of the Complaints in Rollins and Allied-Signal and the First
Amended Complaint in Allied-Signal are enclosed.  On October 2,
1992, United States District Judge Joseph E. Irenas consolidated
Rollins and Allied-Signal.  On November 24, 1992, United States
Magistrate Judge Joel B. Rosen entered Case Management Order No. 1
("CMO I") in the consolidated actions.  A copy of CMO I is
enclosed.

B.          The Settlement Process

CMO I establishes a dual case management approach
utilizing simultaneous litigation and settlement tracks.  Some of
the objectives of the dual track case management approach are
described in paragraph 2 at page 3 of CMO I.  The settlement track,
which    includes    a    voluntary,    informal,    non-litigated
settlement/mediation process, is described in CMO I commencing at
paragraph 31 on page 9.

The purpose of this letter is to fulfill the requirements
of paragraph 33 of CMO I by inviting you to participate in the BROS
Site Settlement Process in lieu of joinder as a defendant in one or
both of the pending cases and to provide you with the documents
required to be sent to you by that paragraph of CMO I.
Accordingly, in addition to the Complaints in Rollins and Allied-
Signal, the First Amended Complaint in Allied-Signal and CMO I, you
will find enclosed copies of the following:

1.  A confidential packet of information identifying the
evidence currently available linking your company to the BROS Site;

2.  A set of the Guidelines For Conduct of Reasonable
Investigation in BROS Settlement Process Protocol; and

3.  A Certificate of Commitment to Participate in
Informal Discovery and Settlement Negotiations, which Certificate
is to be signed and returned no later than January 13, 1992.
(PLEASE NOTE THAT THE DECEMBER 13, 1992 DATE CONTAINED IN PARAGRAPH
33(f) OF CMO I IS EXPECTED TO BE CHANGED BY JUDGE ROSEN TO JANUARY
13, 1992.)

I also enclose copies of (a) a proposed BROS Settlement
Process Confidentiality Order and (b) the BROS Settlement Process
Protocol.

Page -3 -
December 15, 1992


C.          Scheduling of Meeting

        The plaintiffs in Rollins and the defendants in Allied-
Signal are expected to schedule a meeting with the recipients of
this letter at which information will be provided concerning the
status of the BROS Site, the status of the litigation and the
settlement/mediation process contemplated by CMO I.  You will be
advised of the time and place of that meeting shortly.  You are
encouraged to attend that meeting.

        I have been asked, on behalf of the Rollins plaintiffs
and the Allied-Signal defendants, to transmit this letter and
accompanying materials to you in compliance with the requirements
of CMO I.  I recognize, however, that if and when any claims may be
asserted by the Rollins plaintiffs and the Allied-Signal defendants
against you with respect to the BROS Site, such as might be the
case if you elect not to participate in the settlement/mediation
process contemplated by CMO I, the relationship my firm and I have
had with many of you may prevent me from asserting any such claims
against those of you with whom my firm and I have had such
relationships and, in any such events, the Rollins plaintiffs and
Allied-Signal defendants will presumably be represented by other
counsel.

        I look forward to seeing all of you at the meeting to be
scheduled shortly. In the meantime, if you have any questions or
would like any further information, please contact me (201) 966-
8041 or Jeff Pollock (201) 966-8199.

                        Very truly yours,


                        WILLIAM H. HYATT, JR.

WHH:pld
Enclosures


PRIVILEGED AND CONFIDENTIAL B&D MA LM          0035495

# Exhibit D.

SWIDLER & BERLIN
CHARTERED

3000 K STREET, N.W.
SUITE 300
WASHINGTON, D.C. 20007-3851
(202) 944-4300

BARRY L. MALTER
ATTORNEY-AT-LAW

DIRECT DIAL
(202) 944-4946
TELEX 701131
TELECOPIER (202) 944-4296

March 11, 1993

<u>VIA FEDERAL EXPRESS</u>

Jeffrey Pollack, Esq.
Pitney, Hardin, Kipp & Szuch
200 Campus Drive
Florham Park, New Jersey  07932

Re:  <u>Bridgeport Rental & Oil Services ("BROS") Superfund Site</u>

Dear Jeff:

    Pursuant to our telephone conversation with you on Monday,
March 8, 1993, we are transmitting herewith Black & Decker's
response to the informal interrogatories.  This response was
prepared after conducting a thorough investigation in accordance
with the Guidelines For Conduct of Reasonable Investigation in
the BROS Settlement Process Protocol.  We have also enclosed a
check in the amount of $1,500.00 to cover Black & Decker's share
of the settlement expenses.

    Neither the material supplied to Black & Decker by the BROS
Settlement Committee nor the information adduced in our
investigation reveals a nexus between Black & Decker and the BROS
Site.  At most, the evidence suggests that A&A Waste Oil ("A&A")
removed a waste oil and water mixture from Black & Decker during
some periods in the 1970's and early 1980's.  Other evidence
indicates that material from A&A went to the BROS Site during
July 1979 (and in the early to mid-1960's when the Site was
operated by Regal Petroleum Company).

    There is evidence, however, that A&A utilized sites other
than the BROS Site during the period in which Black & Decker may
have been a customer of A&A.  For example, certain documents
indicate that in 1968 to 1972 and in 1974, material from A&A was
transported to a facility (which is now also a Superfund site) in
Pennsylvania.  And it is not clear that Black & Decker material
was taken to the A&A facility during the period when A&A may have
disposed of material at the BROS Site.  There is testimony that a
waste oil and water mixture was taken by A&A directly from the

PRIVILEGED AND CONFIDENTIAL B&D MA LM          0035477

Jeffrey Pollack, Esq.
March 11, 1993
Page 2

Black & Decker plant to local quarries (where the mixture was used to settle dust).[1]

Thus, the presently available evidence is not sufficient to confer liability on Black & Decker. While CERCLA may have relaxed the causal connection between conduct and damage traditionally required to prove liability, it did not eliminate it. Under CERCLA, "actual dumping of a defendant's waste at the . . . site is an element of [the plaintiff's] case." United States v. Wade, 577 F. Supp. 1326, 1331 (E.D. Pa. 1983). See also United States v. Marisol, 725 F. Supp. 833, 840 (M.D. Pa. 1989) (causal nexus under CERCLA requires that plaintiff prove by a preponderance of the evidence that a defendant's hazardous substances were deposited at a site).

In sum, although there is evidence that Black & Decker used the services of A&A, there is no evidence that any of Black & Decker's material was transported to the BROS Site.

If you have any questions concerning this material, please feel free to call either of us.

Sincerely,

*Barry*

Barry L. Malter
Julie A. Weisman

---

[1] There is testimony that A&A had been spraying quarry roads for at least seven years prior to 1982.

PRIVILEGED AND CONFIDENTIAL B&D MA LM          0035478