# Exhibit H.



**Alexander & Alexander Inc.**
111 Market Place
Baltimore, Maryland 21202
Telephone 410 547-2800
FAX 410 547-2914

October 7, 1994

Mr. Gregory M. Rovnak
Environmental Claims Specialist
Liberty Mutual
100 Main Street
P.O. Box 1525
Dover, NH  03820-1525

**Re:**   Black & Decker Corporation
BROS Superfund Site, Logan Township, NJ
<u>Liberty Mutual File #:  P033-Creation</u>

Dear Mr. Rovnak:

I am writing on behalf of Black & Decker (U.S.), Inc. in response to your letter of April 12, 1994, addressed to Julie Weisman of Swidler & Berlin, concerning the BROS Superfund site (the "BROS Site" or "Site").

Attached hereto is a summary of Black & Decker's involvement in the BROS Settlement Process. *(See Attachment 1)*. The summary provides a factual and procedural overview of this matter, and helps place the specific information you requested in context.

In addition to the numbered questions set forth in your April 12th letter, you requested a copy of any responses to information requests from the U.S. Environmental Protection Agency or any other regulatory agency.  Black & Decker has not received any such information requests.

Black & Decker has, however, received and responded to information requests from the BROS Settlement Process Committee (the "Committee").  We would be happy to discuss with you a mechanism for providing to you the non-privileged portions of those responses. Responses to your other questions are provided below.



PRIVILEGED AND CONFIDENTIAL B&D MA LM          0036022

XXX-001



Mr. Gregory M. Rovnak
October 7, 1994
Page 2

**Question No. 1:** Correspondence included with your claim notice letter of 3/3/94 indicates the waste product generated from the Hampstead facility was a waste oil and water mixture. What was the type of oil and nature of use?

**Response:** According to Black & Decker's employees, nearly all of the waste oil and water mixture consisted of a water-soluble coolant/lubricating oil used to cool metal parts during machining operations. The remaining material in the waste oil and water mixture consisted of residue from cutting oils that Black & Decker's employees removed from sumps attached to metal cutting machines.

**Question No. 2:** A&A allegedly removed the waste oil and water mixture on an on-call vs. a regularly scheduled basis. Did Black & Decker have a contract with A&A? Please submit a copy.

**Response:** The Hampstead Purchasing Department issued purchase orders to A&A for removal of the waste oil and water mixture. No copies of these purchase orders have been located. Pursuant to the record retention policy of the Hampstead facility, records are kept no more than five to seven years.

**Question No. 3:** The exact quantity of waste and/or materials shipped.

Response: Due to the limited information concerning A&A's relationship with Black & Decker and A&A's operations, in general, and the multiple locations to which A&A shipped oil, it is impossible to determine the exact quantity of waste oil picked up by A&A from Black & Decker and the quantity, if any, of such waste oil that was sent to the BROS Site.

PRIVILEGED AND CONFIDENTIAL B&D MA LM          0036023



Mr. Gregory M. Rovnak
October 7, 1994
Page 3

The available information suggests that A&A removed waste oil and water from the Hampstead facility from approximately 1972 until at least 1980 or 1981. During the time that A&A removed material from the Hampstead facility, the monthly quantity removed was between 6,000 and 11,000 gallons. According to deposition testimony in a 1982 State of Maryland proceeding involving A&A, some of the waste oil from Black & Decker was sprayed directly on dirt roads by A&A to suppress dust, but more often A&A brought Black & Decker waste oil to the A&A facility in Baltimore, Maryland.

The 1982 testimony by an A&A employee is that, at the Baltimore facility, A&A deposited waste oil and water mixtures from customers such as Black & Decker into a 10,000-gallon settling tank. A&A would then skim the oil from that tank and transfer it to a shipping tank from which A&A sent oil to different locations. (Waste oil from other customers apparently was placed directly into the shipping tank.)

A&A maintains that it never sent waste oil to the BROS Site, and that, instead, it sent waste oil to other facilities in Pennsylvania, Maryland, and New Jersey. It appears that A&A waste oil was, indeed, sent to such sites. For example, the former owner of a waste oil reclamation facility identified by A&A, Oil Recovery Company, Inc. of Clayton, New Jersey ("Oil Recovery"), has stated that Oil Recovery picked up a large amount of A&A's waste oil from 1975 until 1982. However, Oil Recovery's business documents apparently were taken into custody by the New Jersey Attorney General's office in connection with an investigation in the early 1980's. We are attempting to locate and review these documents.

In addition, ledgers from the Berks Associates/Douglass Superfund site in Douglassville, Pennsylvania show that shipments of waste oil went from A&A to that site from 1968 through 1972 and in 1974. *(See Attachment 2)*

PRIVILEGED AND CONFIDENTIAL B&D MA LM          0036024



Mr. Gregory M. Rovnak
October 7, 1994
Page 4

Also, an Oil Operations Permit Site Inspection Report, compiled by an official from the State of Maryland and dated April 10, 1979, states the A&A disposed of waste oil at Baumgarten in Pennsylvania. *(See Attachment 3).*

A&A's contention that it never sent any waste oil to the BROS Site is, however, difficult to reconcile with information obtained by the litigants in <u>Rollings Environmental Services (N.J.), Inc. v. United States</u> and United States v. Allied-Signal, Inc. A page from a 1979 BROS ledger lists four 6,000 gallon shipments in July of 1979 from A&A to the Site.[1] Additionally, a truck driver testified in his deposition that from February, 1978 to February, 1979, he took one to two truck loads of waste oil from A&A to the BROS Site per week.

The Committee has reviewed the information collected through the "informal discovery" process conducted in the BROS Settlement Process. On three separate occasions -- in September and November of 1993 and in July, 1994 -- the Committee assigned Black & Decker "tentative" gallon amounts. Black & Decker appealed each of these "tentative" allocations by way of an informal procedure established by the Committee.

After the third appeal, on August 19, 1994, the Committee "determined" that 136,012 gallons of Black & Decker's material reached the BROS Site. The Committee stated that, for purposes of the Settlement Process, this figure is final and that it will not consider additional appeals.

---

[1] The 1979 BROS ledger was introduced as an exhibit during the deposition of the former BROS employee who compiled the ledger. A copy of the 1979 BROS ledger is attached hereto as Attachment 4.

PRIVILEGED AND CONFIDENTIAL B&D MA LM          0036025



Alexander
&Alexander

Mr. Gregory M. Rovnak
October 7, 1994
Page 5

**Question No. 4:** The dates of shipments and a copy of any waste legers.

**Response:** As stated in response to Question No. 2, the available information indicates that A&A removed waste oil and water from the Hampstead facility from approximately 1972 until at least 1980 or 1981.

The document attached hereto as Attachment 4 is a copy of a 1979 BROS leger, as identified by a former BROS employee during her deposition. Attachment 5 is a log of A&A's pickups from March 3, 1973 through October 1, 1973. This document was provided to us by the custodian of the Berks Associates/Douglassville Superfund sit.

**Question No. 5:** How waste was disposed of before and after this site was used.

**Response:** See response to Question No. 3.

**Question No. 6:** Any information you have regarding this site, including its background, regulatory history, results of any testing, including testing of lead contamination, and if any remediation has taken place.

**Response:** The Complaint in <u>Rollings Environmental Services (NJ) Inc. v. United States</u> and the First Amended Complaint in <u>United States v. Allied-Signal Inc</u>. include information concerning (1) the history of Site operations and ownership; (2) entities that sent materials to the Site; (3) testing at the Site; (4) regulatory and litigation background; and (5) a description of remedial activities. These documents are attached hereto as Attachments 6 and 7.

PRIVILEGED AND CONFIDENTIAL B&D MA LM          0036026



Mr. Gregory M. Rovnak
October 7, 1994
Page 6

Additionally, the U.S. Environmental Protection Agency has been conduction on-site incineration of oil, sludges and sediments from the Site lagoon. Ground water remediation has not yet occurred.

**Question No. 7:** Advise if there have been any state, federal, or other environmental violations issued to your company involving this site.

**Response:** There have been no state, federal or other environmental violations issued to Black & Decker involving the BROS Site.

**Question No. 8:** Amendatory Endorsement #18 under policy LG1-131-010406-158 effective 7/1/78 through 7/1/79 amends the insured's duties in the event of occurrence as soon as practical after Black & Decker receives notice of an occurrence. Correspondence included with your notice letter indicates Black & Decker may have had notice of an occurrence on or about 12/17/92 based on a letter from counsel for the private litigants to potentially responsible parties. This claim was reported to Liberty Mutual on 3/3/94. Please advise the reason for the delay.

**Response:** When Black & Decker received the letter from counsel for the private litigants, it was in the process of developing a revised insurance notification procedure. One of the purpose of revising the procedure was to avoid providing notice of frivolous claims (asserted in an attempt to sweep as many deep pockets as possible into the Superfund process). Black & Decker viewed a revised notification procedure as something that would be beneficial to itself and its insurers, as it would serve to avoid the unnecessary expenditure of resources.

As set forth in the responses to previous question: there is no oral testimony, statements, or documentary evidence that material generated by Black & Decker reached the BROS

PRIVILEGED AND CONFIDENTIAL B&D MA LM          0036027



Mr. Gregory M. Rovnak
October 7, 1994
Page 7

Site. The Company believed that, by taking advantage of an informal appeal process, it could convince the Committee that Black & Decker had no responsibility for conditions at the BROS Site. The appeal was partially successful in that the Committee determined that it did not have sufficient information to allocate a share to Black & Decker for purposes of settlement among the private parties. However, the Committee assigned a "tentative" share to Black & Decker for purposes of mediation between the private parties and the government (although Black & Decker was not identified to the government of the mediators as a party assigned a share).

Alexander & Alexander notified Liberty of the BROS matter following the events set forth above. The timing for the notification was determined by Alexander & Alexander, in accordance with its view of priorities in the notification procedure that was developed. As set forth above, the Committee recently assigned a "final" share to Black & Decker, but the Company has not decided whether to participate in any settlement.

In addition to the information proved herein, there are other documents that relate to the information you have requested. You are welcome to review any non-privileged documents at the offices of Swidler & Berlin in Washington, D.C. Please contact Neil Gordon at (202) 424-7593 if you would like to arrange to review this material.

We will keep you informed of further developments in this matter. Please contact me if you have any questions.

PRIVILEGED AND CONFIDENTIAL B&D MA LM          0036028



Mr. Gregory M. Rovnak
October 7, 1994
Page 8


Sincerely,


Michael D. Margiotta


Attachments


cc:    Ms. Linda Biagioni


PRIVILEGED AND CONFIDENTIAL B&D MA LM          0036029



PRIVILEGED AND CONFIDENTIAL B&D MA LM        0036030

PRIVILEGED AND CONFIDENTIAL B&D MA LM          0036031



PRIVILEGED AND CONFIDENTIAL B&D MA LM        0036032



PRIVILEGED AND CONFIDENTIAL B&D MA LM            0036033



PRIVILEGED AND CONFIDENTIAL B&D MA LM          0036034



PRIVILEGED AND CONFIDENTIAL B&D MA LM

0036035

PRIVILEGED AND CONFIDENTIAL B&D MA LM        0036036

PRIVILEGED AND CONFIDENTIAL B&D MA LM

0036037



PRIVILEGED AND CONFIDENTIAL B&D MA LM

0036038



PRIVILEGED AND CONFIDENTIAL B&D MA LM        0036039



PRIVILEGED AND CONFIDENTIAL B&D MA LM          0036040



PRIVILEGED AND CONFIDENTIAL B&D MA LM        0036041

PRIVILEGED AND CONFIDENTIAL B&D MA LM          0036042



PRIVILEGED AND CONFIDENTIAL B&D MA LM          0036043



PRIVILEGED AND CONFIDENTIAL B&D MA LM          0036044

C

OIL OPERATIONS PERMIT APPLICATION

PERMIT NUMBER: *79-OP-168*

1. NAME OF FACILITY (AS IT SHOULD APPEAR ON PERMIT): *E & R Waste Oil Service*

2. ADDRESS OF FACILITY: NUMBER *1500 1* STREET *Patapsco Avenue*

   CITY *Baltimore* STATE *Md.* ZIP CODE *21215*

3. ADDRESS WHERE PERMIT SHOULD BE SENT: NUMBER *3635* STREET *Woodland Ave*

   CITY *Baltimore* STATE *Md.* ZIP CODE *21215*

4. PERSON CONTACTED: *None* TELEPHONE NUMBER: *578-6856*

5. PERSON TO CONTACT ABOUT PERMIT: *Mr. Goldstein* TELEPHONE NUMBER: _____

6. GENERAL DIRECTIONS TO FACILITY FROM MAJOR ROAD: _____

7. TYPE OF FACILITY: *Waste Oil Storage tanks*

8. DOES THIS FACILITY GENERATE WASTE OIL? YES _____ NO *✓*

   QUANTITY _____

   HOW IS WASTE OIL DISPOSED OF? *Taken to Baumgarten in Pa.*

9. ARE THERE OIL SATURATED SOILS? YES *✓* NO _____ WHERE? *at loading area.*

10. ARE OIL WATER SEPERATORS NEEDED? YES _____ NO *✓* WHERE? _____

11. ARE ANY CONTAINMENT SYSTEMS NEEDED? YES _____ NO *✓* WHERE? _____

12. ADDITIONAL COMMENTS: *Removal of oil saturated soils at loading + unloading sock.*

13. INSPECTED BY: *Crowley* DATE: *4-10-79*

PRIVILEGED AND CONFIDENTIAL B&D MA LM          0036045

XXX-024

| Date of Sale | Gals @ Price Sold | Amt. of Load | Date | Age Check | Balance Due |
|---|---|---|---|---|---|
| 5-25 | 6000 @ .14 Lambso (803) | 840.00 | 5/29 | 840.00 5/29 | — 0 — |
| | 6000 @ .14 Bish (804) | 840.00 | 5/29 | | |
| | " " " Bish (805) | 840.00 | | | |
| 5-26 | " " " " (806) | 840.00 | | 5040.00 | |
| | " " " " (807) | 840.00 | | 5/29 | |
| 5-29 | " " " " (808) | 840.00 | | | |
| | " " " " (809) | 840.00 | | | |
| 5-21 | 2500 @ .15 Fuller (812) | 375.00 | | | |
| 6-1 | 500 @ .15 Fuller (845) | 75.00 | 4/27 | 1165.00 | |
| 8 | 3300 @ .15 Fuller (846) | 495.00 | | 5877 | |
| 12 | 3800 @ .15 Fuller (954) | 570.00 | | | |
| 20 | 1200 @ .12 Carlotti (876) | 144.00 | 4/20 | 144.00 5/2 | — 0 — |
| 21 | 6500 @ .14 Bish (877) | 910.00 | | | |
| | 6500 @ .14 Bish (878) | 910.00 | 4/21 | 3514.00 | |
| | 6500 @ .14 Bish (879) | 910.00 | | 5/64 | |
| | 5600 @ .14 Dish (880) | 784.00 | | | |
| 26 | 4200 @ .14 Lambso (883) | 588.00 | 4/26 | 1946.00 | |
| | " " " (884) | 588.00 | | 5/84 | |
| | 5500 " " (885) | 770.00 | | | |
| 27 | 1000 @ .15 Fuller (906) | 150.00 | 4/27 | 5/27 | — 0 — |
| 29 | 3850 @ .12 Casar (909) | 462.00 | 4/29 | 924.00 | |
| | 3850 " " (910) | 462.00 | | 5/94 | |
| 7-13 | 3800 @ .18 " (938) | 684.00 | | | |
| 23 | VOID (963) | — | | | ★ |
| 8-1 | 10 | | | | |

PIT-co

1979

| | | | | | Paid | Balance Due |
|---|---|---|---|---|---|---|
| | | | | | | 1130.00 |
| Jan. | —0— | | | | 500.00 | 600.00 |
| Feb. | (12800) | 10304 | @ .10 = | 1030.40 | — | 1630.40 |
| March | (25400) | 16720 | @ .10 = | 1672.00 | 1630.40 | 1672.00 |
| April | (19600) | 14040 | @ .10 = | 1404.00 | 2186.00 | 900.00 |
| May | (9600) | 4600 | @ .181 = | 289.60 | | 189.00 |
| | | 3200 | @ .10 | 320.00 | 900.00 | 600.00 |
| July | (3200) | 1920 | @ .10 | 192.00 | — | 501.00 |

PRIVILEGED AND CONFIDENTIAL  B&D  MA  LM          0036047

XXX-026

PAGE 2

SCHIAVONI

| DATE OF LOAD | GALS @ PRICE | SLIP NO | AMT. OF LOAD | DATE PD | AMT PD | CHECK NO | BALANCE DUE |
|---|---|---|---|---|---|---|---|
| | | | | | | | —0— |
| 6-19 | 2000 @ .181 | (874) | 362.00 | | | | 362.00 |
| 20 | 1500   .181 | (886) | 271.50 | | | | 633.5 |
| | | | | 7/22 | 633.50 | 54 | —0— |
| 29 | 1600 | (908) | 289.60 | | | | 289.60 |
| | | | | 6/29 | 289.60 | 54 | —0— |
| 7-3 | 1600 | (917) | 289.60 | | | | 289.60 |
| | | | | 7/9 | 289.60 | 54 3 | —0— |
| 11 | 1700 | (932) | 307.70 | | | | 307.70 |
| | | | | 7/11 | 307.70 | 54 15 | —0— |
| 8-3 | 1500 | (992) | 271.50 | | | | 271.50 |
| | | | | 8/6 | 271.50 | 54 | —0— |
| 16 | 1900 | (62) | 343.90 | | | | 343.90 |
| | 1750 | (629) | 316.75 | | | | 660.65 |
| | | | | 8/16 | 660.65 | 54 | —0— |
| 17 | 1300 | (633) | 235.30 | | | | 235.30 |
| | | | | 8/24 | 235.30 | 481 | —0— |
| 21 | 1500 | (650) | 271.50 | | | | 271.50 |
| | | | | 9/24 | 271.50 | 602 | —0— |

PRIVILEGED AND CONFIDENTIAL B&D MA LM          0036048

XXX-027

| Date of Load | Gals @ Price | | Sub $ | Amt of Load | Date Pd | Amt. Pd. | Check no. | Balance Due |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | 678 75 |
| 8·3 | 1250 | .191 | (991) | 226 25 | | | | 905.00 |
| | | | | | 8/3 | 905.00 | 5/5 | — |
| 7 | 1250 | | (996) | 226.25 | | | | 226.25 |
| | 1250 | | (997) | 226.25 | | | | 452 50 |
| 8 | 1250 | | (999) | 226.25 | | | | 678 75 |
| | 1250 | | (002) | 226 25 | | | | 905.00 |
| 9 | 1250 | | (004) | 226.25 | | | | 1131 25 |
| | 1250 | | (006) | 226.25 | | | | 1357 50 |
| | 1250 | | (008) | 226.25 | | | | 1583 75 |
| 10 | 1250 | | (011) | 226.25 | | | | 1810 00 |
| | | | | | 8/10 | 2036 25 | 5/8 | (226 25) |
| 10 | 1250 | | (012) | 226.25 | | | | —0— |
| 21 | 1900 | | (037) | 343.90 | | | | 343 90 |
| 22 | 1250 | | (043) | 226.25 | | | | 570 15 |
| 23 | 1900 | | (045) | 343 90 | | | | 914 05 |
| 24 | 1250 | | (047) | 226.25 | | | | 1140 30 |

PRIVILEGED AND CONFIDENTIAL B&D MA LM

0036049

JOE PRESPARE

1979

| | | | | | Paid | Balance Due |
|---|---|---|---|---|---|---|
| | | | | | — — | 19192.00 |
| Jan. | 30400 | @ | .16 | 4864.00 | | 24056.00 |
| | 800 | @ | .04 | 32.00 | 8000.00 | 16088.00 |
| Feb. | 30000 | @ | .16 | 4800.00 | | 20088.00 |
| | 600 | @ | .04 | 24.00 | 11500.00 | 9412.00 |
| March | 12600 | @ | .16 | 2016.00 | | 11428.00 |
| | 38450 | @ | .165 | 6344.25 | | 17772.25 |
| | 600 | @ | .04 | 24.00 | 17367.25 ✓ | 429.00 |
| April | 43,900 | @ | .17 | 7463.00 | 6617.00 | 1275.00 |
| May | 56,000 | @ | .181 | 10136.00 | | 11411.00 |
| | 2200 | @ | .04 | 88.00 | 9818.20 | 1680.00 |
| June | 66350 | @ | .181 | 12009.35 | | 13690.00 |
| | 900 | @ | .04 | 36.00 | | 13726.00 |
| | 350 | @ | .06 | 21.00 | 12848.30 ✓ | 898.00 |
| July | 62400 | @ | .181 | 11294.40 | 9840.25 | 2353.00 |

PRIVILEGED AND CONFIDENTIAL B&D MA LM     0036050

XXX-029